SCHOTT, Chief Judge.
This is an appeal by the Louisiana State Racing Commission pursuant to LSA-R.S. 49:965 from a judgment of the district court reversing a decision of the Commission granting a license to Livingston Downs Racing Association, Inc., (LDRA) to conduct horse racing in Livingston Parish and vacating the license issued by the Commission. The issue is whether the judgment of the district court is supported by any of the criteria enumerated by R.S. 49:964(G), warranting a reversal of the Commission’s decision. On October 26 1992, LDRA applied to the Commission for a license to conduct race meetings in Livingston Parish. On December 10, 1992, the Commission conducted a hearing on the application which was opposed by Jefferson Downs Corporation, Fair Grounds Corporation, Louisiana Downs, Inc., New Evangeline Downs, Inc., and Delta Downs, Inc. hereinafter referred to as appellees. After the hearing, the Commission granted the license to LDRA and on the following day appellees filed a petition for judicial review of the decision with a request for an order staying the Commission’s decision. The Commission was the only defendant, but LSRA intervened in the proceedings on the Commission’s side. This stay order provoked a number of legal maneuvers which are not germane to this appeal, but on January 15, 1993, the trial court rendered judgment on the basis of the record compiled before the Commission and the pleadings and memoranda filed in the court. The court gave the following reasons for judgment:
... where I find a problem is with Revised Statutes 4:214, 211 and 215. It is very clear to me that this license was based upon having offtrack betting. This facility can not have offtrack betting. It is clear from the reading of the statutes that only a 12facility that was a primary licensee in 1986-87, can have offtrack betting. Apparently, the Racing Commission considered this as to being able to grant a license to someone to have offtrack wagering, and for that reason, I’m reversing the decision of the State Racing Commission, recalling and vacating the license.
Because the court clearly erred in finding that the license was based upon LDRA’s being able to have offtrack betting, we reverse the judgment of the trial court.
The law controlling Horse Racing is found in Title 4, Chapter 4 of the Revised Statutes of which Part 1 contains the provisions for the licensing of a race meeting. Section 147(4) sets out the requirements to be included in an application and Section 159 illustrates some of the criteria to be considered by the Commission in considering an application. A reading of these sections would seem to suggest that the kind of license referred to therein would enable the licensee to proceed with horse racing upon its issuance. However, Section 158 refers to one kind of license that must be applied for each year, another kind that may be good for ten years, and yet another that may approve racing dates for up to three years.
On the other hand Section 181 concerns the kind of license required for one seeking to operate horse racing in a parish for the first time. The procedure requires a referendum election to be held on the question before any horse racing may take place and Section 181(B) requires the following with respect to the application to be submitted to the governing authority of the parish by one seeking to operate horse racing in order to have the referendum election called:
The application shall state the location of the proposed horse racing meet and de *1281 scribe the facilities proposed to be constructed for the holding of the racing meet and shall have attached the license, or a certified copy thereof, for the meeting issued to the applicant by the State Racing Commission. (Emphasis added).
The kind of license mentioned above is what LDRA was applying for and received in this ease. It was obviously conditioned on the approval of the people in Livingston Parish at the referendum and would not enable LDRA to commence horse racing until the Commission would issue a kind of license described in Section 158.
Part 2 of Title 4, Chapter 4, of the Revised Statutes controls Offtrack Wagering or offtrack betting in the state. Section 214 concerns the licensing of offtrack betting and Section 215 refers to the “primary licensee” of a race track. Section 215 provides that “only |sa primary licensee of a pari-mutuel facility” may have offtrack betting. Section 211 restricts the definition of a “pari-mutual facility” to one conducting race meetings in the 1986-1987 session and licensed prior to June 30, 1987. Consequently, under the existing law LDRA can never obtain a license to operate offtrack betting. However, it is clear from the record that the Commission had no intention to authorize the operation of offtrack betting on the part of LDRA and did not base its license on this expectancy.
The application filed by LDRA in October 1992 requests “a new license to conduct race meetings as a primary licensee, together with all rights-in the_ operations of OffTrack Betting Parlors under_ R.S. 215 [sic].” The application was obviously flawed because the only kind of a license LDRA could obtain was the one required by Section 181 to attach to its application with the Livingston Parish governing authority for a referendum election. References to “primary licensee” and offtrack betting were premature.
At the hearing before the Commission, LDRA made it crystal clear that it was not asking for offtrack betting privileges at that time. It acknowledged without equivocation that the license it was seeking would only be used to trigger the referendum election and it would have to return to the Commission to request a Section 158 license for racing dates and a Section 214 license for offtrack betting if the voters approved horse racing in Livingston Parish. Just before the vote of the Commission members was taken, one member specifically asked LDRA’s spokesman if he expected to get offtrack racing privileges and he replied that he hoped so, but realized that this decision would have to be made by the Commission at a later time. In response to a question by another member, LDRA’s spokesman acknowledged that this particular license was only step 1 in a process which required him to apply for further licensing before he could operate a race track and offtrack betting. In fact, one commission member observed that granting this referendum license to LDRA would not preclude others from later getting the license to operate horse racing in Livingston Parish if the referendum was approved by the voters.
From the foregoing, it is clear that the license granted was not based upon offtrack betting even though schedules of financial projections contained offtrack betting revenues. The Commission had to know that LDRA might never have a license to operate offtrack betting, especially since the Commission and LDRA were charged with constructive knowledge of the existing law which makes it impossible for LDRA to get such a license. ^Common sense and ordinary judicial deference to the decision making process of an administrative body dictate the conclusion that the Commission did not consider projected offtrack betting revenues in making its decision and did not base its decision upon the premise that LDRA would ever obtain a license for offtrack betting.
Returning to R.S. 49:964(G), we do not find any basis for the trial court to have reversed the decision of the Commission to issue to LDRA this very limited license which did no more than trigger the referendum election and which did not grant racing dates or authorize the operation of offtrack racing by LDRA.
Accordingly, the judgment appealed from is reversed and set aside, and the decision of the Louisiana State Racing Commission granting a license, as required by R.S. *1282 4:181(B) but otherwise limited as discussed herein, is reinstated. All costs of these proceedings are assessed against appellees.

REVERSED AND RENDERED.